23 1202 in re 305 East 61st Street Group, LLC. Mr. Goldenberg. Good morning. May it please the Court. The issue here is standing. What do you have to show for standing? You have to say you suffered a harm, and that if you pursue a lawsuit, you are the direct beneficiary of any recovery from that harm. Right. So more specifically, the issue is, are these direct or derivative claims? Correct, Your Honor. But it's not really standing, right? There's injury causation and redressability regardless. The question is, is it a claim that the individual party can assert, or is it a derivative of the company's claim? A hundred percent. That is the issue here. And so we submit that the starting point and the end point here is to look at the plain language of the operating agreement. The operating agreement conferred rights as to each member, and those rights were twofold. But the right for the direct claims was based on the right to retain, use, occupy, develop, sell designated floors that each member was given in this building. So each member had similar rights? Each member had similar rights, but those rights were direct. So each member has an action having lost, is that right? Correct, Your Honor. So that's not different from member to member, that each of those rights can be vindicated and each of those harms was suffered. But what I'm having difficulty understanding is why that isn't a derivative claim that passes through the LLC. Because the operating agreement was to form this LLC. The members each obtained rights under that operating agreement, and the LLC is in bankruptcy. It is the duty of the trustee to pursue those rights. Not these specific rights, Your Honor, and I'll explain why. There is that section of the operating agreement that gave each member exclusive and unique rights. And I point you to the Chris V. Segrue case. So you can have an instance where a wrongdoer targets multiple parties, and those multiple parties have suffered individual rights. Now, there was a bankruptcy here. Let me interrupt for just a second, though, because I'm just having difficulty understanding how your rights are different from those of the other members. Is it your contention that each of the members has standing to pursue claims against Carter? Yes, Your Honor. Each member under the operating, it's important to understand why this operating agreement was written this way. There's two different types of interests that were granted to the members. A membership interest in the LLC and an exclusive and unique right to a designated floor, a piece of property. And the purpose- Wait, wait, wait, wait, wait, no. The floors are not property. They're not separate property. They would only be separate property after, if and when, the condominium conversion happens. You can't sell a floor of an apartment building that a company owns that is not a condominium, right? That is true, Your Honor, but it's important to understand why was it written this way. They bought a piece of property to convert into a condo. The period in time before you submit the offering plan- But it didn't happen. I know it didn't happen. Well, does that matter whether it converts into a condo? So regardless, even before it's sold or you might purchase it, you have a right to a lease, and then you get to sublease the property, and the proceeds from the sublease go into your pocket, right? And that's exactly- Paying down the debt and so on. So there are rights. There is income that flows directly to Little Hearts that doesn't pass through the company. And that's exactly what happened here. We have a commercial space. So it doesn't matter whether you own the piece of property, but you have rights to the property to exploit it and to profit from it. Correct, and that's exactly why it was written this way, to say, look- And, in fact, there's no reason why you needed to have an interest in the property to have that, right? Like, the operating agreement could have said we're going to have a sublease with- Like, Little Hearts might not own any of the building, but we're still going to have a deal where we lease some part of the building to Little Hearts so they would have the right to develop it and to sublease it. And that's exactly what happened. Little Hearts sublet the commercial space. All rental proceeds from that lease that was in existence at the time of the bankruptcy went straight to Little Hearts. Of the three units that Little Hearts had rights to, two of them had no mortgage, no debt attached to it. Right, but what is alleged to have been done wrong by Mr. Carter and his entities is they mismanaged the LLC. Again, this hang-up on mismanaging, you can have situations- I'm sorry, maybe I'm hung up, if you want to call it that. But let's focus on that hang-up because you need to satisfy me that I shouldn't be hung up on this. It seems to me that the allegations here are essentially that Carter mismanaged the LLC and drove it into bankruptcy. Not so much mismanaged. Intentionally removed a managing member who was managing the property. Initiating state law litigation ensued. Judge Leibowitz from the lower court said, after all these days of hearing, you have nothing. And so what does Mr. Carter do? And a few days later, he files a sham bankruptcy. He forms an entity- Wait, sham bankruptcy is the issue of whether the LLC was really bankrupt before us? No, Your Honor, the issue is do we have direct claims- Well, the allegations are that it was a sham, right? The allegations are it was a sham. So we assume that it is, that it was. Right. We assume that it is. If you look at the complaint, we are focused on exclusive and unique interests in a contract. And there's plenty of case law that we cite to that when those unique and direct interests are affected, you have the right. What happens- Right, so the New York courts apply the Thule standard from Delaware, right? Yes. And Thule is about whether something is direct or derivative. But haven't the Delaware courts been pretty clear that Thule applies when we're talking about a breach of fiduciary duty claim or when it's a right belonging to the company, whether it should proceed as direct or derivative? But the Delaware Supreme Court, I recall, says that when you're seeking vindication of your own right, like the breach of a commercial contract, it belongs to the individual shareholder or the counterparty. And that's what we're- Because the breach of a contract claim is inherently direct. Because you are the counterparty of the contract, and you're seeking damages for breach of contract. That's correct, Your Honor. And the second part of the Thule, if I may, the second part of it is, who's going to benefit here? If you look at the papers, there is no benefit to the company. Why? The company had no interest in these units. Each member poured their own money, not through the company, but to renovate, to develop these units. It didn't go through the company. If there was a mortgage to pay off, Little Hearts didn't owe any money on it. Little Hearts can recover the rental proceeds. Nothing would have flowed through the company. And that makes it direct in nature. It cannot be derivative. Applying the Thule test. What about it being, you know, entangled with your interest? Right. So we heard this catch-all phrase, confused, embedded. There's no confusion here because I ask Your Honors to pay attention to the plain language of the operating agreement. It uses the words exclusive. It's an exclusive right. Each member could do what he or it wanted to do with these floors. It didn't require the consent of the company. It didn't require any approval from other members. So you would separate out the money that you might have made from that contractual entitlement to develop the floors and profit and from your financial interest in the building itself. Right? So the building might be sold and maybe you're entitled to some share of it because you own a fraction of it. You're not entitled to. You also can get lost income from the inability to develop the Marks units. Is that what you're saying? Correct. And these units were valued at a total of $48 million. Is there a risk of double recovery there that may be in compensating you for the loss of revenue for the Marks units? We might be also compensating you for the loss of the equity you had in the building? No, because there were two interests here. The equity was simply there were ten floors. We're going to put 10% to each floor. But the actual value of what you had, these exclusive rights, and this is the together with language in that one section I'm focusing on. They were mutually exclusive interests, and that exclusive right was the right that you had to each floor, which is why each member took their own money and put it in paid contractors to develop those floors. Why? Because there was a condo conversion that was supposed to happen. There was supposed to be deeds given. But before that happened, the members had to memorialize their interest in some way. And that's why we have this offering right now. But I think Judge Menasche's question was, is the measure of damages here solely any loss that Little Hearts experienced from the loss of its lease with SPA or future leases, but not anything to do with an ownership interest in the building because that would be derivative? I would submit that would not be derivative, but if we're going to focus on just rental proceeds- It seems to me that what you are arguing here relates to losses from their contractual right to lease out that piece of the building. And that is distinct from any ownership interest in the building itself. The interest that I'm focused on is found in Section 4 of the operating agreement. It's the right to retain, use, occupy, develop, and acquire these units. Those are the rights that were given to Little Hearts under this contract. Suppose, I mean, you've got the nice fact that, at least atmospherically, that Mr. Carter's entity now owns the building in auction. Suppose I had bought it at auction after the bankruptcy. Would I be under some obligation to recognize Little Hearts' going on? No, Your Honor. We are simply- We have lost these units as a result of Mr. Carter's actions. We have focused- Our target is on Mr. Carter. In fact, I don't think Mr. Carter owns the building anymore, and we are not- He sold it after auction to another buyer. We're not focused on this other buyer. We're focused on what Mr. Carter did to strip the member's equity, this right that it had under the contract- the exclusive and unique right that it was given under this operating agreement. He lost units worth- When you say member's equity, that still suggests to me that you're looking to your- I misspoke, Your Honor. There are two interests at play here. Again, I'm focused on that clause. But maybe that was a meaningful slip, because really all of this derives from the formation of the LLC in the operating agreement, which had certain plans and obligations. And that still sounds to me like it's a derivative claim that is the same as the other member's claim that ultimately the entity was badly treated. Other members can't have rights that are exclusive to just one member. Other members could not go into my client's units and do anything to it. It's all the very same type of right. Each of the members had rights to use and sign and lease the particular floor that they were- Right. So these are contractual rights that are attributed to each member based on their floors. So yes, they were all granted same rights, but those rights are direct. Those rights are exclusive. Those rights cannot be shared, unlike a typical derivative lawsuit with shareholders. From the other direction, would the creditor's trust be able to bring a lawsuit in order to recover the loss of income of your client from the parks unit? It's not the creditor trust property. It's not the property of the estate. Because it's not a claim that would belong to the company. It's only your individual, Little Hearts' individual claim as the counterparty to the operating agreement. It can't pursue into the terms of the operating agreement. There was a priority scheme in this contract. I guess what maybe Judge Carney is getting at is it does seem like this is the way that the operating agreement divvied up the interests of each of the investors in the building. And the fact that they gave them rights to particular floors and rights of development and so on, as opposed to just giving them an interest in the company and having a share of all the profits. Because they arranged it that way, you're taking it out of bankruptcy and suddenly it can all be breach of contract claims. Is that right? That's one of the claims we allege. And you're saying that the reason why you can do that, I mean, there's an intuition that says, well, maybe it's just happenstance that that's how you arranged it. And it really is the same thing as everybody having interest in the building. But I guess you would say, well, they didn't have to arrange their affairs that way. They didn't have to give individual entitlements to each investor. They could have just given them a stake in the company overall and all the profits could have flowed through the company. But that is not the way they set this up, this transaction. No, they set this up as a de facto condo until the offering plan was approved by the AG's office. They had to memorialize their rights in some way, and this is how they did it. So let me get at this in another way. What you are separating out, it sounds to me, is the contract, breach of contract claims as being distinct from the breach of fiduciary duty claims. Because the breach of fiduciary duty claims, the fiduciary duty runs to the LLC and to all its members in the aggregate. It does not necessarily run to each individual shareholder. It could be done that way, Your Honor. We do allege both breach of contract and breach of fiduciary duty. But our first claim is breach of contract. And all we're asking for is our day in court on a $48-plus million loan. How is that different from the breach of fiduciary claim? I mean, it still involves the obligation to manage in good faith and to run the consortium and the de facto condo, as you've said, for the interests of the whole. It's for the interests of each member and their unique rights. It's not that I'm making this up. We use the words exclusive in this operating agreement for a reason. Was the duty different to each member? Or was it just they each had proportionate interests based on their contribution and the floor that they own? But the nature of the duty and the quality of the breach seems to me the same with regard to each of the members. Is that wrong? Well, I again point you to that Chris V. Sugru case. You can have a wrongdoer that causes harm to multiple people based on the same act. So here you can have the wrongdoer cause harm to multiple members who have unique and direct rights pursuant to a contract. I'm just saying a moment ago that your interest in the Marx units doesn't really belong to the company. It does not. So if the manager of the company has a fiduciary duty to the company and to its members, it has a fiduciary duty to them as investors in the building, and it can't mismanage the building to destroy their interest. But to the extent that there's a counterparty to a contract that has a right to a lease and can make money from a sublease and so on, there's no fiduciary duty on the part of the manager of the building to protect the interests of that counterparty in a lease, right? So that's why it's different. You're saying you were an investor, and so there's a fiduciary duty that goes to you about managing the building, but you're also a contractual counterparty that had a right to develop parts of the building and to sublease it and to make money. And the fiduciary duty wouldn't reach that. That's a separate contractual claim, contractual entitlement that you have. Correct. Wouldn't that be covered by the duty of good faith and fair dealing? Well, there's an implied covenant in every contract. Well, right, but that's a contractual claim, right? It's an express breach, or it's a breach of the covenant. But in any event, it derives from the contract of which Prime was a party and you were a party, and it gave you an entitlement. But it has nothing to do with Prime's duty as the manager to act in a fiduciary capacity on behalf of the building as a whole and all the investors. How would that duty be expressed differently as a qualitative matter? How would which duty expressed? We're talking about a breach of fiduciary duty, a contractual duty, a duty of good faith and fair dealing, and each has to do with the role and the actions of the defendant here. Well, it could be in the defendant's capacity as a managing member. It could be in its capacity as another contracting party. I understand they were labeling them differently, but substantively, what would the difference be? It's a different claim. It's a different form of relief. Can you describe in any practical way how the duty would be? Is it more relaxed in one context than another? I mean, like you can mismanage a little, but not a lot? Well, a fiduciary breach of fiduciary duty is based on trust and confidence that- I'm aware of that. Right. But here, we could simply be relying on a contractual obligation that each member owed to each other. I understand that. And so that's how you would distinguish it. So maybe you'd say that a breach of fiduciary duty, it's a higher standard. Perhaps. And so you might breach it sooner by acting your own interests or seeming to act in your own interests than would arise at a contractual level. I'm sorry. I'm still having a little trouble sorting it all out. One way of looking at this is that Little Hearts and the Marx interests are like shareholders, very large shareholders in a corporation. The other parties are like smaller shareholders. And as a result, the Marx interests are harmed more grievously by the actions of Carter than the other shareholders. But isn't that just like what happens in corporate situations where the claim is that the manager made off with all the money? And so the company is harmed and the shareholders are each harmed in proportion to how many shares they held and what they were worth. Well, I would say, Your Honor, that this isn't your typical derivative shareholder lawsuit. In a typical derivative case, you have individuals who are issued shares or perhaps membership units in a company, and those units are identical units. Here we have… Yeah, but some have more. Here the units are divided by one guy owns three floors and the others own one. But the value of each is not dependent on the actions of the debtor. Class A shareholders and Class B shareholders. No, no, no. What I'm trying to say is it's dependent on what you do with your unit. Do you put in millions of dollars out of your pocket into your unit or do you put it through the company? Or is the value of those units dependent on the actions of the company itself or the actions that you take as a member? This is how it's different. This is not a shareholder traditional scenario. This is, well, if I'm a member and I want to invest in my unit, I'm going to put whatever money I want into it. I'm going to do whatever I want to it. One other question that's trying to get at this transaction. What is Mr. Carter's obligation as a contracting party to Little Hearts as distinct from the obligations that he or his entity undertook when it became the managing agent for the LLC? It's to not violate another member's exclusive rights to use, retain, occupy, rent their unit. And this is exactly what he did. Well, that's because that would be a breach of contract. That wouldn't necessarily be a breach of a fiduciary duty. Correct. So you said a moment ago that the difference between the breach of the covenant of good faith and fair dealing and the breach of fiduciary duty was somehow a matter of degree. But isn't your argument that it really is different duties and it covers different conduct? So we said a moment ago that Little Hearts did not need to be an investor in the building in order to have rights to develop. There could have been a contract just for lease to Little Hearts that gives Little Hearts the right to develop and sublease the property and to make money. So in the case in which Little Hearts has that right but is not an investor in the company and then the manager of the building does something to prevent them from taking advantage of that contractual right, that would be a breach of contract, right? Correct, Your Honor. But it would not be a breach of fiduciary duty. That's right. Because you'd just be a counterparty to a contract. You wouldn't be an investor in the building. They wouldn't be managing the building on your behalf. So to the extent that you're saying that we have contractual rights and that's what we're seeking to recover, that is just entirely separate from the breach of the fiduciary duty, which runs to you as investor, not as contractual counterparty. That's correct, and that's why we've alleged two separate actions. You can breach the covenant of good faith and fair dealing without breaching the fiduciary duty. Correct. And you're saying there is a separate breach of the covenant of good faith and fair dealing because you are a contractual counterparty with Brock. Correct, and that's what we've alleged in the state court complaint. By the way, does your brief make any such distinction? Yes, well, we parsed it out. There's separate sections for breach of fiduciary duty, breach of contract, and we cite to authority for both. So should your Honor not accept the breach of fiduciary duty, you can accept the breach of contract. They're alternative causes of action that we pled. I got it. Okay. Thank you. Okay, thank you very much, Mr. Goldenberg. This is a time for rebuttal, so we'll hear from you again, but let's turn to the appellee, Mr. Catalinello. Good morning, panel members, and thank you for saying my name so eloquently. It took me a long time to figure it out. It's okay. I'm going to jump around because it does seem like the panel is focused on contractual rights, and I think it's important. Well, it sounds like your adversary has kind of quasi-conceded the fiduciary duty issues as being derivative and has focused our attention specifically on the contract rights, so that's probably a good place to start. Okay, Your Honor. I think what my adversary has not focused on, though, is the complaint, because that's a document that was, of course, before the bankruptcy court at the time the motion to dismiss was filed. And if you look at the complaint, and in particular, paragraph 106, which is the linchpin to the breach of contract claim that we're spending a lot of time this morning talking about, you will see in paragraph 106 the very same allegations. I think it's true that in the complaint they focus on the breach of fiduciary duty. They cite the provisions of the operating agreement that talk about fiduciary duty, and it seems like from the complaint that the contractual claim duplicates the fiduciary duty. But complaints are not required to allege legal theories, right? So we don't hold – as long as the facts support a claim, we allow a party to make legal arguments in support of the facts that they've alleged in the complaint. So you can't say that they've waived an argument by not laying out a legal theory in the complaint? No, Your Honor, on the contrary, I'm not saying they waived it. They embraced it, meaning when you look at paragraph 106 of the complaint, it specifically talks about breaching the operating agreement as to all members, not just to little hogs. It talks about failing to complete the project, not the second floor unit, not the basement. It talks about failing to pay the mortgage for the entire building, not just the second floor unit or the lease. And the distinction is very important, Your Honor, because what happened here impacted the entire building. Well, if there are other – if there are contractual counterparties that have some kind of property interest in some parts of the building and the manager engages in some kind of scheme that does involve management of the building, but it has the effect of destroying the rights of those counterparties, that would be a breach of the covenant of good faith and fair dealing, right? Sure. Or either express in the contract or good faith and fair dealing, right? Sure. So why can't they rely on that as in a contract claim? And the fact that they have a contract right is what makes it different. Right, because that's not what the operating agreement provides for. The operating agreement is not a separate contract to utilize floors. The operating agreement governed the rights of all of the shareholders, members, because it was an LLC. And it designated – But aren't these separable? Like you could have an operating agreement that just says everybody has an interest in the company overall and they're going to get a pro rata share of the profits, or you could have a contract that says the counterparties have specific entitlements that they get, right? Right. And you set it up or, you know, the parties here set it up in the latter way, that Little Hearts would have the right to develop some area and they could sublease it and some portion of the money would go directly into their pocket. It wouldn't flow through the company. It was their own individual entitlement. So doesn't that make it different? Well, first of all, that's not factually correct because all of the proceeds flow first through. The operating agreement provides for that. Flows through paragraph 21.2. Well, they first have to pay off debts and whatever. Correct. But it doesn't go into a large pot that belongs to the building and then it's dispersed. They get to do the sublease and they have an agreement with the sub store. Right, but it pays off the mortgage. That's important. And then afterwards, yes, there's a waterfall. But, no, you can't separate these. There are no separate rights under this operating agreement that you can pull out and sue on. Well, can I ask you this question? Like let's say that they were separate. Let's say that Little Hearts did not own any part of the building, right? Let's say the LLC just had an agreement with Little Hearts that said, okay, we're going to give you the right to a 100-year lease. You will pay for the lease. And in exchange, you get exclusive rights to develop that part of the building and sublease it out and make money off of it and so on. Right? So there's no ownership of the building. It all is about these rights and the marks units. In that case, could they sue for breach of contract? That's not our case. But that would look more like a direct claim. And, in fact, that's the case. So that would be a direct claim. Why can't the same party be both an investor in the building and also a counterparty that has these property interests and units in the building? Well, because, Your Honor, when you look at his complaint and you look at the allegations that supposedly caused the injury, it's all based upon mismanagement of the building, mismanagement of the project. And that, according to the law, is a derivative claim. If we had a case where the counterpart or Little Hearts was not an investor in the building, they were just a counterparty. It would be a direct claim because their rights as counterparty were destroyed. And the claim that they would make about breach of contract or breach of the covenant of good faith and fair dealing would depend on the mismanagement of the building and a sham bankruptcy that took control of the building and extinguished their rights. Right? They would have all those allegations. But it would still be a direct claim because they're a contractual counterparty. Right? Yes, Your Honor. So in that case where they're not an investor, it wouldn't matter if the allegations in the breach of contract claim talked about mismanagement of the building because the important point is they are a contractual counterparty. They have their own rights under the contract that they're seeking to vindicate. Right. And so what I'm puzzled by is why it makes a difference that they also have some other set of rights under other provisions of the contract about ownership of the building. Why can't they just be the counterparty as well as the investor? Because they're not, Your Honor. They're an investor. And as an investor, they made a capital contribution. Each of them did. It's what you're essentially suggesting that in the hypothetical, the lease is a completely different thing. Correct. Whereas in the actual scenario of this case, the rights all derive from membership in the LLC. That's right, Your Honor. They're not separate. It's not like they are – Little Hearts is not in the same position as the spa. Correct. Right? Because the spa also gets a lease. Correct. And I guess the spa – I don't know if they suffered any losses. They just said, the hell with this. We're getting out of here because the landlords are fighting and we don't want to be in the middle of it. But if they had some right to this lease and it was Carter who breached that by whatever he did managing the building, that would have no source other than the lease. Correct. Here, the source of everybody's rights who are members of the LLC stems from their membership in the LLC. Correct, Your Honor. And, in fact, the Sugru case, the first case – Is that inherent? So we have case law on point. So we have a case called Miller v. Bright Star Asia. I don't know if you've come across that in the research, but it's a case where there is an investor in the company. And we say that the fiduciary duty claims seeking to vindicate their financial interests in the company are derivative. But to the extent that there are contract rights that flow directly to the investor that are independent and exclusive, that's a direct claim and they get to pursue it. So we've said that. We've said that you can, in fact, occupy both positions. You can be an investor and also a contractual counterparty. Right. But, again, that's – we don't have that here, respectfully. You're saying they're not a counterparty? They're not even a contractual counterparty? They're a counterparty to the operating agreement, but, again, all of the rights derive through the operating agreement. Said differently, the Criss case, Sugru case that my observatory claims so tightly to, that's a very good example of where there was an investor relationship but also separately an exclusive licensing agreement that gave plus funds, which was the agreed party, at least the position to say it had a direct claim for the bad conduct by the defendants. And the court there said you're right. The damages, the injury suffered as a result of that separate independent exclusive licensing agreement is apart from the loss of the investment funds. That's not what you have here. So then if, in fact, there was an operating agreement that divvied up the ownership interests of the building and then they separately executed a separate agreement that they called condominium rights or development rights or something that then gave them the rights to develop parts of the building and to sublease them and to make money off of them, that would look like that case? Well, it would start to look like it, but the difference here is everything, everything that Little Hearts had by way of the right to occupy and utilize its spaces, or Pollock or One Stone or Prime, all flowed through your membership interest in the operating agreement. So we're talking about a set of factions, very, very different. But what do you mean it flowed through it? I mean, we said before, and I think you agreed, you could have a scenario where Little Hearts didn't own any part of the building but still had the rights to develop the units and to sublease them. But that's not what happened here. So they're not doing it as an investor because it's not inherent in the idea of being an investor in an LLC or in a building that you get exclusive rights to some set of units to develop them and to sublease them, right? That's an extra thing that this arrangement allowed. Well, it's not an extra thing. It's connected to the investment. So it's not inherent in the role of being an investor in the company that you get to do that. That's a special contractual right that they didn't have to be granted, right? But again, it flowed through their right as a member. They don't have a right to do anything unless and until they're a member. So what you're doing is you're separating. They are a member, and they have the right to do that, but the different members had different rights. Doesn't Little Hearts have some special rights? They don't have to get approval for certain renovations. They can develop the roof and so on. They have rights that other members did not have, right? So there are some aspects of their contractual rights that do not look like the other members. And if the contractor said something different about what they could or couldn't do, that would be their rights, right? It's defined by the contract, not by their status as a member of the LLC. I mean, is that not right? I don't agree with that, Your Honor, because, again, their rights to do anything, all of the members, were derived through the operating agreement. We're talking about here in this example. Somehow there was a separate agreement where they had a right to do something in the building apart from being a member, and that's just not what happened here. Mr. Goldenberg said a moment ago that the creditor's trust would not be able to sue for the damages related to the loss of rights to develop the Marks units. Do you disagree with that? Is the creditor's trust able to sue prime in order to recover for the loss of future proceeds based on the lack of development of the Marks units? Well, it's to sue for the loss of the recovery of the damages to the building. And, of course, the units are in the building. And that's exactly what happened here. The trustee asserted a claim against the client. Right, but the building is going to make an overall profit. The Marks units, a lot of the revenue was going to go directly into Little Hart's pocket, right? So how would we understand that as a recovery to the LLC when, in fact, Little Hart's had a right just to sublease and to pocket some portion of the proceeds? Isn't that money that would just go to Little Hart's, not to the LLC? So if the creditor's trust is recovering on behalf of the LLC, it would not recover those damages. Well, it would recover the damages associated with the loss of all of the units. And that, of course, was a right that he had, just like all of the other members had, to use, develop the units themselves. So I don't see a distinction. I mean, and, in fact, in bankruptcy, that's exactly what trustees are mandated to do, which is to pursue the claims four and a half of the company. It's the company's claim. And let's just spend one more minute on that. Even if, even if this dialogue gave rise to perhaps some direct claim, and I disagree it does, but if it did, the case law is very clear. It is so confused and embedded in. And I know my colleague sort of said it in a flippant way, like, oh, they're hanging on that. But that's the law. If it's so confused and embedded in the damage to the company, and here it is, it's still a derivative claim. That's the law. Is that really a distinction? So in the Thule framework, right, as I was saying before, the Delaware courts have made clear that the Thule framework is the deaf who share duty claims or rights belong to the company. And the question is whether they need to be brought as derivative claims or direct. But the Delaware Supreme Court, and we said this in the Miller case I mentioned a moment ago, has said there's an antecedent question. It applies to those kinds of cases. But when the shareholder is suing for his own individual right, like the breach of a commercial contract, then the Thule framework doesn't apply. So why should we say that if, in fact, you're at Thule step zero where you're outside of this distinction, that it then can be embedded in the company? I mean, aren't the Delaware courts and the New York courts that have adopted the Delaware courts case law saying to us that when it's your own right, your own contractual right, it's inherently a direct claim? If you have an independent contractual right, yes. But that's not the fact here, Your Honor. Again, the fact here is that all of the members, all of the members, of course, slightly different allocations because of the membership interest. And it doesn't have to be perfect. The case law says it doesn't have to be the exact claim, but it's a similar claim. They all suffered the same damage, was it the right to use their spaces, their units. And what Marx is complaining about is his particular units. But there's nothing in this complaint, number one, that shows any independent duty that Carter owed to that particular member. There's no duty, but there is a contract, right? And Carter and Prime are counterparties to the operating agreement. They all are, correct. All of the members are parties to the agreement. Have the other two members asserted any position? No. They've just been silent. They asserted claims, certain of them asserted claims in the bankruptcy case. And those claims are working through a reconciliation process. But they have not brought any separate claims against my clients. And the creditor's trustee is just waiting to see what the outcome here is in terms of what he can assert? Well, Your Honor, there's a global settlement that was reached between the creditor trustee and my client as to these claims that are being alleged. And that creditor trustee settlement has now been the engine, if you will, to make distributions to all the creditors, including, frankly, the members based on their allocable shares of interest in the property. So there's a settlement that was approved by Judge Lane that is being implemented as we speak. And that settlement, I'm sorry, would cover then your opponent here? It covers all of them. And that would take account also of the extraordinarily high level of investment that they made in their own units. Is that right? Right. On an allocable basis. Correct, Your Honor. And so what impact would our resolution here have on that settlement? Monetarily? Would it throw the whole thing up in the air? I mean, is it? No, it wouldn't. It's a separate settlement that we've achieved with the trustee to settle our claims. Now, that settlement, we believe, resolves all of the claims that were asserted in this particular complaint, which is why we take the position the creditor trustee is the one who only has standing to assert those claims. So, yes, our position would be ultimately that these claims have been resolved. Well, that's the question, right? So if, in fact, there is a distinction between Littlehart's capacity as an investor and as a contractual counterparty and landlord, then it might be that you settled the investment claims but not the landlord claims. But you're saying that there's no such thing as landlord claims. But that's what we're deciding here, whether they have some separate right. Can I ask another question just about the operating agreement, just to clarify? Maybe we've already covered this kind of a point. But the operating agreement could have included parties who did not have an ownership stake in the LLC, right? So, like, if, in fact, they just want to say here's how it's operated, these entities will be members. And so they sign the operating agreement. This entity is going to develop, you know, the commercial space on the first floor and have a right to a sublease. They could have put that into the operating agreement, and everybody signed it, and they'd be counterparties to some overall contract, right? I, frankly, have never seen that. Only members. I mean, you wouldn't do that. But I'm just saying there's no principled reason why that could not happen. Well, I'm not sure about that. In the operating agreement, it governs the rights and obligations of members. If it's an operating agreement and it's an LLC, it's the members. If it's a shareholder's agreement, it's the shareholders. But if you have a development agent that's responsible for developing certain units in the building, maybe you want to include them in that overall framework. There's nothing that would prevent that from happening, right? That could be, again. But that's not what happened here, Your Honor. We don't have any separate agreement other than the operating agreement that governs the rights of the parties. Okay. Thank you very much, Mr. Catalanello. We'll turn back to Mr. Goldenberg on rebuttal. I will just be brief here. Two cases that we cite to that deal with this contract issue, and I'd like to point your honors to it. It's the Wiener v. King case where the court there said direct claims, where there's alleged breach is of contractual right given to members as opposed to a right to an LLC. And then there's the Ruffalo case. This is out of the Delaware Chancery Court, applying Thule, where the court stated, quote, claims based upon contractual rights of the shareholder, which exists separately from any right of the corporation are direct claims. Are those cases that are cited in your brief? Yes, Your Honor. Ruffalo and- I just want to make sure of that, just because we want to find where they are. Ruffalo and Wiener. But the point here- I see Ruffalo, but I'm sorry, I didn't see the other one. Wiener v. King, 43 miscellaneous- Oh, I see it, I got it. You see it. Okay, and you did not cite or discuss the case that Judge Manasci has referred to, the Miller v. Brightstar? Unfortunately, I did not. But again, where I started, I want to finish. And I want to point your honors- Just to clarify, so the Wiener v. King case does cite a bunch of Delaware cases. So it does suggest that actually New York follows Delaware on these points. And so the case I'm referring to, Miller v. Brightstar Asia, does talk about all of the Delaware cases on this point. But what happens at Thule is at zero. And which is why I just wanted to point your honors to that. But I'd like to just, again, focus on there is a scenario where you can be an investor and you could also be a contract counterparty. And here we have Section 4 of the operating agreement that says you have a membership interest together with other things. And that conjunction, together with, refers to distinct and mutually exclusive interests that you can have here. So that Chris v. Sugrue case, it is on point. To the extent Miller provides a useful commentary on the Delaware cases, I wonder whether we might give opposing counsel or both counsel an opportunity to give us their comments on it. Okay, sure. If you want to take a look at Miller v. Brightstar Asia, I don't have the citation. Well, maybe I do actually, but I'm sure you can find it. Why not, within a week, send a letter of no more than three pages if you think it has implications for the case. Thank you very much. Thank you, your honors. Could I just ask, again, I understand where you are locating a kind of right for your client. What is the corresponding duty to the other counterparties to that contract? To not violate that exclusive and unique right that you have to your designated floors. That's the contract claim, which can be separate from a fiduciary duty that a managing member owes to other members. And why are they not overlapping and using the embedded notion? They seem to be so, and we spent a lot of time discussing how they are different or related. And the notion seems to be still that if they are closely related and difficult to sort out, that that is enough to suggest that they could be pursued by the trustee, the creditor's trustee. The trustee cannot pursue rights that are given under a contract to, for example, source of income on rent. It cannot. Not just a contract, it is the operating agreement. Correct. From which all else flows, from what I can tell. There's no other agreement, is there? There's the operating agreement. There's the operating agreement, but this operating agreement gives distinct and mutually exclusive rights to its members. And to the point here that you can have an ownership interest in LLC, and you can have other rights that are separate from that ownership. And so here we have this clause that talks about that separateness. And the reason for that is exactly what was contemplated here. We're building a building. We are putting our own money into our own floors. We're doing what we want without anyone else's consent. And we have a right to source of income from those units, which is exactly what Little Hearts had. Little Hearts collected money from the spa lease. The company didn't. Okay, I understand that argument, as I guess you can tell. But Mr. Catalanello says, well, we have a settlement with the creditor's trust, and that settlement covers all of the loss of income from all of the members. And they all have an interest in their units. You have an interest in your units, and it settles claims about the loss of that investment and expected income. So why do you think that the settlement with the creditor's trust does not make you whole with these claims? Well, first of all, my client poured over $8 million into its units. I think this is going to be pennies on the dollar, so it's not going to be making us whole. We did not agree to the settlement. We objected to it. And if your honors find that we do have direct claims, then the settlement, as my adversary said, it's not affected by the decision here. Could I just puzzle a little more now over what the relief is that you are asking us to provide? It seems to me that the relief has to include remanding this case to the state courts, right?  If this is a direct claim against Mr. Carter and Prime, they're not bankrupt. This is not an adversary proceeding against the bankrupt estate. There's no subject matter jurisdiction. If we have direct claims to pursue, we go back to state court. That's the relief we're seeking. That's the relief we're seeking. We're seeking the remand to the state court. But if it's closely related to a bankruptcy, the bankruptcy court could adjudicate even a direct claim, right? I submit that it's not closely related. It's outside of the estate. Because if it's closely related, it starts to look like it's embedded. I mean, you know, there's stuff for bankruptcy courts and there's stuff not for bankruptcy courts. Right. And you originally brought this case as not in bankruptcy. Well, we were pursuing an entity and an individual who are not bankrupt. Right, right. And they removed it to the bankruptcy court. That's correct. And the question, I guess, of how closely related it is and whether there is any jurisdiction at all in the bankruptcy court is pretty closely tied to the question of is it a direct or a derivative claim. Because to whatever extent it's a direct claim, it's a little hard to see why the bankruptcy court should get involved at all. It was removed to the bankruptcy court on the basis that the trustee had standing, Article III standing. We submitted it did not. And if it doesn't have standing to pursue any of the claims that Littlehart's alleged in the state court action, then there is no subject matter jurisdiction. There is no close relation. Okay. But, I mean, it's possible for you to have a direct claim and get the direct claim to be related enough to a bankruptcy that you would have communicated in the bankruptcy court. That is, I'm saying, you're saying it. It's possible, but it's not here. But it's not impossible for such a thing to be the result.  Okay. Okay, thank you very much. Thank you, Your Honors. Mr. Goldenberg, the case is submitted.